UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 13-24355-CIV-ALTONAGA

**JOEL D. JOSEPH**,

    Plaintiff,
v.

**RICHARD S. BERNSTEIN**, *et al.*,

    Defendants.
_____/

## ORDER

On April 28, 2014, Plaintiff, Joel D. Joseph ("Plaintiff"), filed a First Amended Complaint . . . ("Amended Complaint") [ECF No. 29], asserting claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO" or the "RICO Act"), 18 U.S.C. section 1961 *et seq.*, and the Florida Unfair Insurance Trade Practices Act ("FUITPA"), Florida Statute section 626.951 *et seq.*, in addition to claims of elder abuse and fraud. Defendants, Richard S. Bernstein ("Bernstein") and Richard S. Bernstein and Associates, Inc. ("Bernstein, Inc.") (collectively, the "Bernstein Defendants"); and American General Life Insurance Companies LLC ("American Insurance"), American International Group, Inc. ("American Group"), and American General Assurance Company, Inc. ("American Assurance") (collectively, the "American Companies"); filed a Consolidated Motion to Dismiss . . . ("Motion") [ECF No. 33]. The Court has carefully considered the Motion, Plaintiff's Opposition . . . ("Response") [ECF No. 35], Defendants' Consolidated Reply . . . ("Reply") [ECF No. 38], and applicable law. For the reasons that follow, the Motion is granted.

## I. BACKGROUND

On November 15, 1993, then-72-year-old Harold Joseph ("Harold") purchased a life insurance policy from Defendants. (*See* Am. Compl. ¶¶ 9–10). At the time, Harold was suffering from Alzheimer's disease. (*See id.* ¶ 10). The Bernstein Defendants are Florida insurance brokers (*see id.* ¶¶ 4–5); American Assurance is an Illinois corporation (*see id.* ¶ 6); American Insurance is a Delaware limited liability company (*see id.* ¶ 7); and American Group is a Delaware corporation (*see id.* ¶ 8). The face amount of the insurance policy was originally $3,261,392.00, and is now $2,086,044. (*See id.* ¶ 11). Plaintiff, along with his sisters, is a beneficiary of the policy, and the sisters have assigned their claims concerning this case to Plaintiff. (*See id.* ¶ 12). Plaintiff is also a trustee of the life insurance trust that owns the life insurance policy. (*See id.*).

According to Plaintiff, Bernstein knew Harold was vulnerable to persuasion, but Bernstein "convinced, pressured, cajoled and conned Harold Joseph into buying a life insurance policy that he did not understand." (*Id.* ¶ 13). Harold understood the policy would pay his beneficiaries upon his death, but this was not the case, as the policy does not pay anything until Harold and his wife both pass away. (*See id.* ¶ 14). Harold also did not understand the policy would never pay off if either he or his wife lived to be over 100. (*See id.* ¶ 16). Plaintiff alleges Bernstein held himself out as a friend to Harold, but he was not truly a friend; Bernstein was only interested in earning a very large commission (more than $100,000) from the sale of the policy. (*See id.* ¶¶ 17–18).

On the basis of these and other factual allegations, Plaintiff attempts to state several claims for relief — the first two of which are not based on the above allegations. The First Cause of Action (Count I), titled "For Violations of Sections 1962(c) and (d) of RICO," does not

incorporate any of the previous paragraphs of the pleading, instead resting exclusively on Plaintiff's allegations he has been harmed by Defendants' alleged racketeering activity. (*See id.* ¶¶ 19, 45–47). Plaintiff alleges Defendants "have engaged in a pattern of racketeering activity . . . by committing and/or aiding and abetting at least two such acts of racketeering activity within the past 10 years." (*Id.* ¶ 25 (alteration added)). Plaintiff claims Defendants conspired to commit an assortment of criminal activities, including securities fraud. (*See id.* ¶¶ 23–43). According to Plaintiff, these activities "were acts of criminal fraud meant to manipulate the capital positions and earnings of financial companies around the world." (*Id.* ¶ 34). Plaintiff claims Defendants' financial transactions led to the federal government's seizure of American Group, injuring Plaintiff and leaving him unable to sell Harold's life insurance policy. (*See id.* ¶¶ 44–47).

In his Second Cause of Action (Count II), titled "Violations of Sections 1962(a) and (d) of RICO," Plaintiff "seeks to recover actual and treble damages based on defendant's [sic] violations of [sections] 1962(a) and (d) of RICO." (*Id.* ¶ 48 (alteration added)). Count II does not incorporate any of the Amended Complaint's previous paragraphs, but Plaintiff claims Defendants' violations of the RICO Act, which he links to "the above-described pattern of racketeering activity," resulted in Plaintiff's injury — his inability to sell the policy. (*Id.* ¶¶ 49–50).

The Third Cause of Action (Count III), titled "Violations of the Unfair Insurance Trade Practices Act," does not incorporate any of the Amended Complaint's previous paragraphs and states the Florida Insurance Code, Florida Statute section 624.155, provides a civil remedy for violations of sections of the insurance law, including section 626.9541. (*Id.* 10, ¶ 53). The FUITPA, at section 626.9541, makes illegal "unfair methods of competition and unfair or

deceptive acts of [sic] practices." (*Id.* ¶ 54). Plaintiff alleges Defendants violated the FUITPA by misrepresenting to Harold that his children would receive a payment upon his death, and by failing to explain the policy would be worthless if he or his wife survived past the age of 100. (*See id.* ¶¶ 16, 55–56). Plaintiff claims he has been injured by the misrepresentations and violations of law because the policy cannot be sold now and because despite Harold's passing, the beneficiaries have not been paid. (*See id.* ¶ 57).

The Fourth Cause of Action (Count IV), titled, "Elder Abuse in Violation of Florida Social Welfare Law," does not incorporate any of the pleading's preceding paragraphs. (*Id.* 11–12). Plaintiff alleges: "A vulnerable adult who has been abused, neglected, or exploited . . . has a cause of action against any perpetrator and may recover actual and punitive damages . . . . The action may be brought by the vulnerable adult, . . . or by the personal representative of the estate of a deceased victim . . . ." (*Id.* ¶ 58 (quoting FLA. STAT. § 415.1111 (alterations added))). Plaintiff alleges Harold was a vulnerable adult, and Defendants abused, neglected, and exploited him by selling him a policy he did not understand nor want. (*See id.* ¶¶ 59–60). Plaintiff has suffered damages as a result of Defendants' abuse, neglect, and exploitation. (*See id.* ¶ 62).

The Fifth Cause of Action (Count V), titled "Common Law Fraud Against All Defendants," does not incorporate any of the Amended Complaint's preceding paragraphs. (*See id.* 12–13). Plaintiff alleges Bernstein misrepresented to Harold that his children would receive the policy's benefits upon his death, and Harold relied on these misrepresentations. (*See id.* ¶¶ 63, 65). Plaintiff states Bernstein is an agent of Bernstein, Inc. and the American Companies, "and all [D]efendants are liable under agency principles." (*Id.* ¶ 64 (alteration added)). Plaintiff alleges Defendants intended to deceive Harold, and both Harold and Plaintiff were harmed by the misrepresentation. (*See id.* ¶¶ 66–67).

Case 1:13-cv-24355-CMA   Document 39   Entered on FLSD Docket 08/19/2014   Page 5 of 20

CASE NO. 13-24355-CIV-ALTONAGA

Plaintiff previously attempted to plead the claims stated in Counts III, IV, and V in his initial Complaint (*see* Complaint [ECF No. 1]), which the Court dismissed for various pleading deficiencies and for failure to state a claim (*see* April 21, 2014 Order ("April 21 Order") [ECF No. 28]).[1]  Plaintiff's Amended Complaint essentially re-pleads the same failed counts, and adds two new RICO claims.  (*See generally* Am. Compl.).  Defendants move to dismiss the Amended Complaint in its entirety for failure to state a claim, as well as a variety of other reasons.  (*See generally* Mot.).  The Court addresses the relevant arguments below.

## II. LEGAL STANDARDS

Several rules governing the sufficiency of pleading are at issue.

*Federal Rule of Civil Procedure 12(b)(6)*

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (alteration added)).  Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).  Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).  To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556).  "The mere possibility the defendant acted

---

[1] This Order assumes the reader is familiar with the case and the April 21 Order, and consequently contains an abbreviated discussion of the issues and applicable law where the Amended Complaint mirrors the initial, dismissed Complaint.

unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). *Pro se* pleadings in particular are construed liberally. *See Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

*Federal Rule of Civil Procedure 8(a) and Claims Against Multiple Defendants*

A complaint is adequate if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). When a complaint indiscriminately lumps all defendants together, it fails to comply with Rule 8. *See Lane v. Capital Acquisitions & Mgmt., Co.*, No. 04-60602 CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, the [] Complaint fails to satisfy the minimum standard of Rule 8."). While a complaint against multiple defendants may be "read as making the same allegation against each defendant individually," the "factual allegations must give each defendant 'fair notice' of the nature of the claim and the 'grounds' on which the claim rests." *George & Co., LLC v. Alibaba.com, Inc.*, No. 2:10-cv-719-FtM-29DNF, 2011 WL 6181940, at * 2 (M.D. Fla. Dec. 13, 2011) (citations omitted).

*Federal Rule of Civil Procedure 9(b)*

In addition to satisfying Rule 8(a), a complaint asserting a fraud claim must also satisfy the heightened pleading requirements of Rule 9(b), stating "with particularity the circumstances constituting fraud." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008); *see also Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 594 F.3d 783, 789 (11th Cir.

2010) (citations omitted). Rule 9(b) is satisfied where the complaint states:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Mizzaro*, 544 F.3d at 1237 (quoting *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007)). "[U]nder Rule 9(b), it is sufficient to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." *Id.* (alteration added). The purpose for this degree of particularity is to "alert[] defendants to the precise misconduct with which they are charged and protect[] defendants against spurious charges of immoral and fraudulent behavior." *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (citations and internal quotation marks omitted; alterations added).

### III. ANALYSIS

#### A. The RICO Claims (Counts I and II)

Plaintiff attempts to state two claims for relief under the RICO Act, 18 U.S.C. section 1964(c), which allows "[a]ny person injured in his business or property by reason of a violation of section 1962" to bring a suit in district court. 18 U.S.C. § 1964(c) (alteration added). To state a claim under this section, the plaintiff must establish "first, that the defendant committed a pattern of RICO predicate acts under 18 U.S.C. [section] 1962; second, that the plaintiff suffered injury to business or property; and, finally, that the defendant's racketeering activity proximately caused the injury." *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014) (citations omitted; alteration added).

In Count I, Plaintiff alleges Defendants' violations of 18 U.S.C. sections 1962(c) and (d) led to him being unable to sell Harold's life insurance policy. (*See* Am. Compl. ¶¶ 45–47). In Count II, Plaintiff alleges Defendants' violations of sections 1962(a) and (d), as described in Count I, caused him damage. (*See id.* ¶ 50). Plaintiff claims Defendants' racketeering activity led to American Group's financial insolvency and later to its seizure by the federal government, all of which injured Plaintiff by leaving him unable to sell the policy. (*See id.* ¶¶ 44–47). Defendants assert Counts I and II should be dismissed because: (1) the RICO claims are preempted by Florida state law under the McCarran-Ferguson Act, 15 U.S.C. section 1012; (2) the RICO claims lack specificity; (3) Plaintiff fails to plead sufficient predicate acts; and (4) Plaintiff has not demonstrated proximate cause between the acts and his injury. (*See* Mot. 6–13).

### 1. The McCarran-Ferguson Act

Under the McCarran-Ferguson Act, "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b) (alterations added). The Act bars application of federal law where "(1) the federal statute at issue does not specifically relat[e] to the business of insurance; (2) the state statute at issue was enacted . . . for the purpose of regulating the business of insurance; and (3) application of the federal statute would invalidate, impair, or supersede the state statute." *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1220 (11th Cir. 2001) (quoting *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999)) (internal quotation marks omitted; alterations in original); *see also* 15 U.S.C. § 1012(b).

The McCarran-Ferguson Act only applies to the "business of insurance," not the 'business of insurance companies." *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S.

205, 217 (1979) (internal quotation marks omitted). "[B]usiness activities of insurance companies not peculiar to the insurance industry are outside the scope of the 'business of insurance.'" *Perry v. Fid. Union Life Ins. Co.*, 606 F.2d 468, 470 (5th Cir. 1979) (citation omitted; alteration added) ("In making available premium financing, an insurance company is acting not as an insurer but as a creditor . . . .")).

Defendants assert the court's opinion in *Braunstein v. Gen. Life Ins. Co. of Am.*, No. 01-6040-CIV, 2002 WL 31777635 (S.D. Fla. Nov. 19, 2002), dictates a finding of preemption. (*See* Reply 4). In *Braunstein*, the plaintiff brought a private RICO suit alleging the defendant injured him by misrepresenting a policy's premium due date and coverage period. *See Braunstein*, 2002 WL 31777635, at *2–3. The court held, pursuant to the McCarran-Ferguson Act, the FUITPA preempted the RICO claim because Florida Statute section 626.9541(1)(o) already provided a private right of action for the kind of injury the plaintiff was alleging, and allowing the RICO claim to go forward would supersede state policy. *See id.* at *3–8.

Although Defendants argue the FUITPA likewise preempts Plaintiff's RICO claims (*see* Mot. 6–7), that argument fails to recognize Plaintiff's RICO claims are not predicated upon allegedly deceptive acts that occurred in connection with the sale of the insurance policy to Harold (*see* Am. Compl. ¶¶ 19–51). Unlike the plaintiff in *Braunstein*, whose claims were based on practices regarding the sale of an insurance policy, *see* 2002 WL 31777635, at *2–3, Plaintiff's RICO claims are more properly characterized as based not on the "business of insurance," but on the "business of insurance companies," *Royal Drug Co.*, 440 U.S. at 217.

Plaintiff's RICO claims are predicated on Defendants' financial transactions, including alleged securities fraud — acts Plaintiff claims led to American Group being seized, leaving Plaintiff unable to sell his insurance policy. (*See* Am. Compl. ¶¶ 23–51). While Plaintiff

attempts to make a FUITPA claim in Count III of his Amended Complaint, the FUITPA claim and the RICO claims stem from completely different predicates. The FUITPA claim is predicated on the deceptive sale of the policy to Harold (*see id.* ¶¶ 55–57), but the Amended Complaint makes plain the RICO claims flow exclusively from Defendants' alleged racketeering activities (*see id.* ¶¶ 44–47, 50). Because Plaintiff's RICO claims are based on Defendants' racketeering activities and not any deceptive acts committed in connection with the sale of insurance, *Braunstein* is inapplicable, and Plaintiff's RICO claims are not preempted by the FUITPA.

### 2. Pleading Deficiencies

Defendants argue Plaintiff's RICO claims, if not preempted by the FUITPA, must nevertheless be dismissed because they lack the requisite specificity. (*See* Mot. 12–13). Plaintiff fails to address this argument. (*See generally* Resp.). Plaintiff's RICO claims must comply with Federal Rule of Civil Procedure 8, and, because civil RICO claims "are essentially a certain breed of fraud claims," Counts I and II must also comply with the heightened pleading standard of Rule 9(b). *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

Counts I and II do not satisfy Rule 8 because Plaintiff's allegations indiscriminately lump all five Defendants together. In Count I, Plaintiff alleges American Group engaged in various financial transactions. (*See* Am. Compl. ¶¶ 30–41). Plaintiff then claims all Defendants "participated, either directly or indirectly" and "conspired amongst each other" to engage in this activity without articulating the factual basis for *each* Defendant's liability. (*Id.* ¶¶ 42–43). Similarly, in Count II, Plaintiff alleges all Defendants invested or conspired to invest the proceeds of the racketeering activity without explaining the factual basis for each one's liability.

(*See id.* ¶¶ 49–50).  By lumping all Defendants together, Plaintiff has not "give[n] each defendant 'fair notice' of the nature of the claim and the 'grounds' on which the claim rests." *George & Co., LLC*, 2011 WL 6181940, at *2 (citation omitted; alteration added).

The allegations of fraud likewise fail to satisfy the heightened pleading standard of Rule 9(b).  Even in the allegations pertaining to American Group — the only Defendant individually named as engaging in the various fraudulent activities forming the basis for the RICO claims — Plaintiff fails to "plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." *Mizzaro*, 544 F.3d at 1237.

### 3. Predicate Acts

Defendants also argue Counts I and II fail to state RICO claims because Plaintiff has failed to allege sufficient predicate acts (*see* Mot. 7–9), and any predicate acts alleged are exempted from RICO (*see id.*; Reply 5).  Defendants are correct.

To establish a cause of action under the RICO Act, Plaintiff must establish Defendants "committed a pattern of RICO predicate acts." *Simpson*, 744 F.3d at 705.  An "exhaustive list" of predicate acts is found in 18 U.S.C. section 1961. *Beck v. Prupis*, 529 U.S. 494, 497 n.2 (2000); *see also* 18 U.S.C. § 1961(1).  "To successfully allege a pattern of racketeering activity, plaintiff[] must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004) (citations omitted; alteration added; emphasis in original).

Plaintiff argues securities fraud qualifies as a predicate act.  (*See* Resp. 18; *see also* Am. Compl. ¶¶ 35, 38).  But RICO provides "no person may rely upon any conduct that would have

been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962" unless the action is against one who has been "criminally convicted in connection with the fraud." 18 U.S.C. § 1964(c). Although Plaintiff alleges American Group has committed criminal acts and has settled criminal and civil charges (*see* Am. Compl. ¶¶ 32, 35–36, 38–40), Plaintiff does not allege American Group or any other Defendant has ever been *convicted* of securities fraud. Therefore, Plaintiff's allegations of securities fraud do not satisfy the predicate act requirement.

Plaintiff also argues "theft" is a predicate act. (Resp. 18; *see also* Am. Compl. ¶ 29). But the only kind of "theft" recognized in section 1961 is "theft from [an] interstate shipment".[2] 18 U.S.C. § 1961(1). Therefore, Plaintiff's allegations of theft also fail to satisfy the predicate act requirement.

Even if Plaintiff had alleged qualifying predicate acts, he has failed to show how these acts demonstrate a continuing pattern of criminal conduct. Although Plaintiff claims Defendants "conducted or participated, either directly or indirectly . . . [in] a pattern of racketeering activity" (Am. Compl. ¶ 42), "legal conclusions masquerading as facts will not prevent dismissal." *Jackson*, 372 F.3d at 1262 (internal quotations marks and citations omitted).

### 4. Proximate Cause

Finally, Defendants argue even if Plaintiff alleges sufficient predicate acts, Counts I and II still fail because Plaintiff has not shown the acts proximately caused Plaintiff's injury. (*See* Mot. 9–12). In his Response, Plaintiff does not address Defendants' arguments, instead reiterating his general allegation American Group's "criminal activities that nearly caused the

---

[2] Plaintiff omits this key language. (*See* Am. Compl. ¶ 26 ("Section 1961(1) of RICO provides that a 'person' commits and [sic] act of 'racketeering activity' by engaging in (a) 'any act or threat involving . . . theft . . . .'" (alterations in original))).

collapse of the U.S. economy, made it impossible to sell [sic] policy at issue herein, damaging plaintiff directly." (Resp. 18).

To bring a private suit under RICO, a plaintiff must allege his or her business or property was injured "*by reason of* a violation of [18 U.S.C.] section 1962." 18 U.S.C. § 1964(c) (emphasis and alteration added). The "by reason of" limitation requires "'a showing that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well.'" *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)). Proximate cause requires "some direct relation between the injury asserted and injurious conduct alleged." *Holmes*, 503 U.S. at 268. "A link that is too remote, purely contingent, or indirect is insufficient." *Hemi Group, LLC v. City of N.Y., N.Y.*, 559 U.S. 1, 9 (2010) (internal quotation marks, alteration, and citation omitted). "[C]ourts should scrutinize proximate causation at the pleading stage and carefully evaluate whether the injury pled was proximately caused by the claimed RICO violations." *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1287 (11th Cir. 2006) (citation omitted; alteration added).

A plaintiff fails to state a valid RICO claim in its pleading when it cannot show proximate cause. *See Hemi Group, LLC*, 59 U.S. at 8–12. In *Hemi Group*, the Supreme Court considered whether under the RICO Act an out-of-state cigarette retailer proximately caused a city's inability to collect taxes. *See id.* at 4–6. The city, which relied on information in federally required sales reports to recover out-of-state sales taxes, brought a RICO claim against the retailer, alleging its failure to file the required reports injured the city in the form of lost tax revenues. *See id.* The Court rejected the city's claim, finding no proximate cause where the relationship between the predicate acts and the harm suffered was "anything but straightforward[, as m]ultiple steps . . . separate the alleged fraud from the asserted injury." *Id.*

at 15 (alterations added). Noting the city's theory of liability rested on "separate actions carried out by separate *parties*," the Court held that allowing the city to hold out-of-state retailers responsible for "fourth-party" taxpayers' nonpayment would stretch the causal chain of RICO too far. *Id.* at 11 (emphasis in original). *See also Anza*, 547 U.S. at 457–58 (rejecting plaintiff's RICO claim it was injured when a competitor's tax fraud allowed it to offer lower prices that attracted customers and reduced plaintiff's market share); *Halpin v. Crist*, 405 F. App'x 403, 406 (11th Cir. 2010) (holding state officials' acceptance of bribes to license a prison canteen did not proximately cause plaintiffs' injury when plaintiffs claimed they had been injured by paying inflated prices).

In Count I, Plaintiff alleges he was injured by Defendants' violations of section 1962(c). (*See* Am. Compl. ¶¶ 19, 46–47). As in *Hemi Group*, the link between Defendants' racketeering activity and Plaintiff's injury is far too attenuated. Plaintiff's allegations similarly involve different actions by different parties, but here, the causal chain is even longer and even more speculative. Several steps separate Plaintiff's injury — his inability to resell the insurance policy — from Defendants' alleged acts of racketeering. "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza*, 547 U.S. at 461. Here, there is simply no direct relationship between the claimed injury and the alleged activity. "Linking the alleged racketeering activity with [Plaintiff's] claimed injury requires . . . a huge leap in logic." *Browning v. Clinton*, 292 F.3d 235, 250 (D.C. Cir. 2002) (alterations added; citation and internal quotation marks omitted). Therefore, Plaintiff fails to state a claim based on a violation of section 1962(c).

Plaintiff also fails to state a claim for a violation of section 1962(d). Subsection (d) requires a plaintiff to allege he was "injured by reason of a *conspiracy* to violate [section]

1962(c)'s substantive provision." *Grange Mut. Cas. Co. v. Mack*, 290 F. App'x 832, 835 (6th Cir. 2008) (alteration added; emphasis in original) (citing *Beck*, 529 U.S. at 500, 507). Plaintiff has not sufficiently alleged "an illegal agreement to violate a substantive portion of the RICO statute," *Jackson*, 372 F.3d at 1269 (citations omitted), and the conspiracy claim cannot stand.

In Count II, Plaintiff alleges he was injured as a result of Defendants' violations of sections 1962(a) and (d). That claim likewise fails, as Plaintiff has not alleged sufficient facts to show how Defendants' alleged RICO violations proximately caused his injury. *See Anza*, 547 U.S. at 461–62 (stating a RICO claim based on a violation of section 1962(a) is cognizable only if the violation proximately caused the plaintiff's injury).

In evaluating proximate cause under section 1962(a), a majority of courts have adopted the "investment rule." *Cox v. Cmty. Loans of Am., Inc.*, No. 4:11-CV-177 (CDL), 2014 WL 1216511, at *9 (M.D. Ga. Mar. 24, 2014) (citing *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008); *Fogie v. THORN Ams., Inc.*, 190 F.3d 889, 896 (8th Cir. 1999); *Vicom v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778–79 n.6 (7th Cir. 1994); *Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir. 1990)). Under this rule, "the plaintiff must show that he was injured by the use or investment of racketeering income, and reinvestment of proceeds from alleged racketeering activity back into the enterprise to continue its racketeering activity is insufficient to show proximate causation." *Id.* (internal quotation marks, citation, and alteration omitted).

Plaintiff's allegations are so lacking it is not at all apparent how Defendants' "use or investment of racketeering income" might have injured Plaintiff. *Id.* Plaintiff alleges Defendants "conspired to use or invest, and used or invested, such proceeds in the operation of the association-in-fact enterprises" (Am. Compl. ¶ 49), but under the investment rule,

"reinvestment of proceeds . . . back into the enterprise . . . is insufficient to show proximate causation." *Cox*, 2014 WL 1216511, at *9 (alterations added). Therefore, Plaintiff has not stated a claim for a violation of section 1962(a). And, as in Count I, Plaintiff's allegations are wholly insufficient to state a RICO conspiracy claim pursuant to section 1962(d).

  **B.**  **Counts III, IV, and V**

In Counts III and IV, Plaintiff attempts to re-plead claims raised in his initial, failed Complaint — without curing the deficiencies identified in the April 21 Order. (*See* Am. Compl. 10–12; *see generally* April 21 Order). Count V is Plaintiff's attempt to re-plead his fraud claim, despite being warned by the Court that it was completely barred by the applicable statute of repose. (*See* Am. Compl. 12–13; April 21 Order 12–13).

Count III of the Amended Complaint, for "Violations of the Unfair Insurance Trade Practices Act" (Am. Compl. 10–11), is nearly identical to Count I of the initial Complaint (*see* Compl. 3–4). The April 21 Order dismissed Plaintiff's original FUITPA claim because no private right of action exists in Florida Statute subsection 626.9541(1)(a), Plaintiff failed to allege compliance with the condition precedent in violation of Rule 9(c) of the Federal Rules of Civil Procedure, and if even a private right of action did exist, it is barred by the statute of limitations. (*See* April 21 Order 9–10).

Likewise, Count IV, titled "Elder Abuse in Violation of Florida Social Welfare Law" (Am. Compl. 11–12), mirrors Count II of the initial Complaint (*see* Compl. 4–5). The April 21 Order dismissed this claim because no private right of action exists under the 1993 version of the law; if a private right of action did exist, it is barred by the statute of limitations; and Plaintiff is not qualified to bring the claim. (*See* April 21 Order 10–12).

Count V, for "Common Law Fraud Against All Defendants" (Am. Compl. 12–13), is Plaintiff's attempt to revive his original Count III (*see* Compl. 5–6), dismissed for multiple reasons, including Plaintiff's failure to plead fraud with particularity as required by Rule 9(b), and — most saliently — the claim is "absolutely barred" by Florida's statute of repose. (April 21 Order 12–13). Although the Court gave Plaintiff an opportunity to file an amended complaint (*see id.* 13), it did not give Plaintiff the opportunity to re-plead the fraud claim, noting Plaintiff cannot overcome the absolute bar imposed by a statute of repose (*see id.* 12).

A side-by-side comparison of Plaintiff's initial Complaint and Amended Complaint reveals Plaintiff has made only a few minor revisions and has not cured the flaws present in the previous Complaint. (*See generally* Compl.; Am. Compl.). Because the Court has already addressed these claims, and Plaintiff's Amended Complaint fails to remedy the issues addressed in the April 21 Order, the Court incorporates the April 21 Order in holding Counts III, IV and V must be dismissed. (*See* April 21 Order 9–13).

In his Response, Plaintiff raises various arguments regarding the timeliness of his claims. (*See* Resp. 13–17). The Court briefly addresses those arguments, despite finding once again that dismissal of Counts III, IV, and V is appropriate on other grounds. (*See* April 21 Order 9–13).

### 1. The Continuing Fraud Doctrine

Plaintiff asserts each payment he makes on the insurance policy restarts the statute of limitations because each payment constitutes a continuation of Defendants' fraud. (*See* Resp. 15–16). According to Plaintiff, "[u]nder the continuing fraud doctrine, all acts in furtherance of a scheme where the early acts were within the statute of limitations are considered timely, even if, when the acts, viewed independently, may be time barred." (*Id.* 15 (alteration added)). So

"[e]ach time that [P]laintiff makes a payment to the [American Companies] the fraud is continuing." (*Id.* (alterations added)).

Florida law recognizes the "continuing tort doctrine." *Suarez v. City of Tampa*, 987 So. 2d 681, 685 (Fla. 2d DCA 2008). "Where the [continuing tort] doctrine applies, a plaintiff may recover damages for tortious acts committed within the limitations period prior to the filing of suit." *Id*. (alteration added). "A continuing tort is 'established by continual tortious *acts*, not by continual harmful effects from an original, completed act.'" *Id.* at 686 (citation omitted; emphasis in original); *see also Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1042 (11th Cir. 2014) (quoting same). "When a defendant's damage-causing act is completed, the existence of continuing damages to a plaintiff, even progressively worsening damages, does not present successive causes of action accruing because of a continuing tort." *Suarez*, 987 So. 2d at 686 (internal quotation marks and citation omitted). Moreover, this doctrine does not extend the statute of repose. *See Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, No. 13-61687-CIV, 2014 WL 2215770, at *6 (S.D. Fla. May 29, 2014).

Plaintiff alleges Bernstein "convinced, pressured, cajoled and conned Harold Joseph into buying a life insurance policy that he did not understand" (Am. Compl. ¶ 13), but nowhere does he allege any Defendant fraudulently induced Plaintiff, Harold, or anyone else to make further payments on the policy (*see generally id.*). Plaintiff's claims are based on continuing harmful effects from an original act, not continual tortious acts committed by Defendants. The continuing tort doctrine is inapplicable, and Plaintiff's argument his continued payments constitute a continuing fraud is unavailing.

### 2. Insurance Payments Resetting the Statute of Limitations

Plaintiff also argues the continued payments on the insurance policy reset the statute of limitations. (*See* Resp. 16 (citing *Hosp. Constructors Ltd. ex rel Lifemark Hosps. of Fla., Inc. v. Lefor*, 749 So. 2d 546 (Fla. 2d DCA 2000))). In *Lefor*, the court declined to dismiss a hospital's claim for unpaid medical bills, finding the debtors' payments on the debt tolled the statute of limitations pursuant to Florida Statute section 95.051(1)(f). *See Lefor*, 749 So. 2d at 547–48. Yet "[s]ection 95.051 delineates an exclusive list of conditions that can 'toll' the running of the statute of limitations." *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1075 (Fla. 2001) (alteration added). Payments on an insurance policy are not on this list. *See* FLA. STAT. § 95.051. Therefore, this argument also fails.

### 3. Tolling the Statute of Limitations Based on Disability

Finally, Plaintiff argues the statute of limitations must be tolled because Harold suffered from Alzheimer's disease at the time the alleged fraud took place and his worsening condition prevented suing Defendants. (*See* Resp. 16–17). Under Florida Statute section 95.051, a statute of limitations is tolled by "[t]he adjudicated incapacity, before the cause of action accrued, of the person entitled to sue. In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action." FLA. STAT. § 95.051(1)(d) (alteration added). Nowhere does Plaintiff allege Harold was adjudicated incompetent before the cause of action accrued. In any event, it has been more than twenty years since Harold purchased the policy. Therefore, this argument is also unavailing, and Plaintiff's claims are time-barred.

### IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss **[ECF No. 33]** is

**GRANTED**.

The Court notes this is Plaintiff's second attempt at stating claims for relief in his pleading, and the deadline for amending pleadings contained in the Court's Order Setting Trial and Pre-Trial Schedule . . . ("Scheduling Order") [ECF No. 16] passed a long time ago, on May 15, 2014. Plaintiff does not seek additional leave to amend nor does he request an amendment to the Scheduling Order. In any event, "denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (citation and internal quotation marks omitted); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) ("The U.S. Supreme Court has held that undue delay and futility are adequate bases for denying leave to amend." (citation omitted)). Therefore, the case is **DISMISSED**, and the Clerk is instructed to mark this case as **CLOSED**.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 19th day of August, 2014.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record; Plaintiff, *pro se*